FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 JUL 30 PM 1: 10

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| THE PITTSBURG & MIDWAY COAL MINING CO., a corporation, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 98-JEO-2885-S |
| WILTON L. HOOD, et al., | ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| THE PITTSBURG & MIDWAY COAL MINING CO., a corporation, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 98-JEO-2890-S |
| JAMES LARRY TURNER, et al., | ) ) ) | |
| Defendants. | ) ) | |

ENTERED
JUL 30 1999

## MEMORANDUM OPINION

Before the court in the above-captioned matters are motions to dismiss these actions filed by Wilton and Maudeen Hood and James and Elizabeth Turner ("the defendants") and the opposition to those motions filed by The Pittsburg & Midway Coal Mining Company, Inc. ("P&M") and Chevron U.S.A., Inc. ("Chevron") ("the plaintiffs"). Under the standard procedures of the court, this case was assigned to a magistrate judge for pre-trial management. The magistrate judge heard the

17

motions to dismiss and issued a Report and Recommendation advising that the motions be granted. The plaintiffs have filed objections to the Report and Recommendation and ask that the court deny the motions to dismiss.

I. **BACKGROUND**[1]

P&M conducts underground mining activities in Tuscaloosa County, Alabama, that purportedly have resulted in damage to the homes of various individuals, including the defendants. P&M leases the mineral rights from Chevron, which owns the coal under the surface. According to the parties, P&M uses what is referred to as the longwall method of mining, which results in planned subsidence of the surface after mining.[2] The defendants assert that the plaintiffs have a common law duty to support the surface without subsidence. The plaintiffs assert that federal and state legislation and regulations, including the *Surface Mining Control and Reclamation Act of 1977*, codified at 30 U.S.C. §§ 1201, *et seq.* ("SMCRA"), its implementing regulations, published at 30 C.F.R. §§ 70, *et seq.*, the *Alabama Surface Mining Control and Reclamation Act of 1981*, codified at *Ala. Code* §§ 9-16-70, *et seq.* ("ALSMCRA"), and its implementing regulations, published in the *State of Alabama Surface Mining Commission Administrative Code*, §§ 880-X-1A *et seq.*, "expressly authorize planned subsidence and modifies the common law to permit a mine operator to subside the surface without the surface owner's consent provided the operator repairs any damage or

---

[1] For the sake of convenience, the court has adapted the background discussion from the magistrate judge's Report and Recommendation and included it herein .

[2] "Planned subsidence" is a euphemism describing what happens when coal is mined out from under the surface and the mined area is allowed to collapse, causing the surface to sink.

2

compensates the owner for any diminution in value caused by the subsidence." (Doct. 9, p. 2).[3]

As a consequence of the actions of the plaintiffs, five additional lawsuits between other Tuscaloosa County surface owners and the plaintiffs in this action were filed in 1997.[4] Those actions are all pending in Tuscaloosa County Circuit Court and are presently assigned to three Circuit Court Judges. The first case, the *Kirkland* suit, was tried to a jury verdict on November 9, 1998. The state court jury awarded the surface owners $160,000 in compensatory damages and $60,000 in punitive damages. (Doct. 12, Ex. E).

The plaintiffs herein, P&M and Chevron, brought this suit on November 18, 1998, seeking a declaratory judgment of the amount of damages due the defendants as a result of the harm caused by P&M's mining activities and a determination of whether, or to what extent, they are responsible for punitive damages or damages as a consequence of mental anguish. *See* 28 U.S.C. § 2201. The defendants, the Hoods and Turners, filed their state court complaints on November 19 and 23, 1998, respectively. The plaintiffs herein have moved to dismiss the state court actions pursuant to Section 6-5-440 of the *Code of Alabama*. (Doct. 9, Ex. C).[5]

The defendants have filed identical motions to dismiss the complaints in both cases before

---

[3] References herein to "Doct. ____" are to the pleading numbers assigned by the Clerk of the Court.

[4] Those lawsuits include: *Kirkland v. P&M, et al.*, CV-97-543, filed May 12, 1997; *Watson v. P&M, et al.*, CV-97-588, filed May 23, 1997; *T.W. Clements v. P&M, et al.*, CV-97-638, filed June 5, 1997; *T.W. Clements, Jr v. P&M, et al*, CV-97-639, filed June 5, 1997; and *Berry v. P&M, et al.*, CV-97-661, the filing date is not apparent on the pleading submitted to this court.

[5] Section 6-5-440 provides:

Simultaneous actions for same cause against same party prohibited.

No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times. *Code of Alabama 1975* § 6-5-440.

this court. They assert: (1) this court lacks subject matter jurisdiction; (2) each complaint fails to state a claim upon which relief can be granted; (3) venue in the Southern Division of the Northern District of Alabama is improper; and (4) the court should exercise its discretion under the Declaratory Judgment Act to decline jurisdiction. Included in each of the two pleadings is a motion to abstain, requesting that the court use its discretion and abstain from exercising jurisdiction over this matter. (Doct. 4, p. 4).

The cases were consolidated by the magistrate judge on January 12, 1999, after it was determined that common issues of law and fact were present. After hearing the motions to dismiss, the magistrate judge filed a Report and Recommendation on February 11, 1999, advising that the motions be granted. The plaintiffs filed objections on February 19, 1999.

## II. DISCUSSION

The magistrate judge recommended that the motions to dismiss be granted because he found that the court should not exercise its discretion to hear this declaratory judgment action. The Court in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 2d 1620 (1942), held that "[a]lthough the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, it was under no compulsion to exercise that jurisdiction." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214, 220 (1995). The issue is "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding in the state court." *Wilton*, 515 U.S. at 282, *quoting Brillhart*, 316 U.S. at 495.

In *Wilton,* the Supreme Court stated:

4

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. [Footnote omitted [6]]. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Wilton*, 515 U.S. at 288. The Court also stated:

> *Brillhart* makes it clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites. Although *Brillhart* did not set out an exclusive list of factors governing the district court's exercise of this discretion, it did provide some useful guidance in that regard. The Court indicated, for example, that in deciding whether to enter a stay, a district court should examine "the scope of the pending state court proceeding and the nature of defenses open there.". . . This inquiry, in turn, entails consideration of "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.". . . Other cases, the Court noted, might shed light on additional factors governing a district court's decision to stay or to dismiss a declaratory judgment action at the outset. . . . But *Brillhart* indicated that, at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in "[g]ratuitous interference," . . ., if it permitted the federal declaratory action to proceed.

*Id.* at 282-83.

The magistrate judge recommended that this court decline to hear and determine the plaintiffs' claims on the merits. The magistrate judge reasoned as follows:

> The declaratory relief sought by the plaintiffs herein directly relates to and concerns the claims pending in the Tuscaloosa Circuit Court actions. The parties are identical. Additionally, those actions are akin to five other actions also pending in that same

---

[6] The text of this omitted footnote reads as follows: "We note that where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy. See, e.g., P. Bator, D. Meltzer, P. Mishkin, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 1451, n.9 (3d ed. 1988)."

5

court and involving the plaintiffs herein. Tuscaloosa County Circuit Judge Robert Harwood, Jr., has already expended a substantial amount of judicial resources on the related *Kirkland* case, which involves common issues of law and fact. According to the defendants herein, Judge Harwood reviewed the substantial submissions of the parties on the motions for summary judgment and he tried the case to conclusion with a jury. [Footnote omitted [7]]. He is presently considering post-trial motions. An appeal in that case is anticipated. Tuscaloosa Circuit Court Judge John H. England, Jr., has scheduled the *Watson, Clements,* and *Berry* cases on his February 22, 1999 trial docket. [Footnote omitted [8]]. For this court to now commence a review of the substantive issues would be a poor use of the limited resources of the federal and state courts. This is especially true, given the current posture of the other cases against the plaintiffs in state court.

There is no reason to believe that the interests of the parties, including any defenses premised on federal law, can not be adjudicated effectively in state court. To the contrary, Judge Harwood's order granting-in-part and denying-in-part the motions for summary judgment demonstrates his command of the subject matter.

The seven cases involving the plaintiffs herein already have been assigned to three Tuscaloosa Circuit Court Judges, a United States District Judge, and the undersigned magistrate judge. Were this court to exercise its jurisdiction to hear the merits of the plaintiffs' claims, wasteful duplication of efforts by the parties and the courts would result, the parties would be forced to litigate the merits in different forums, and the possibility of inconsistent rulings increased.

Report and Recommendation at 7-8.

The plaintiffs objected to these findings and to the magistrate judge's recommendations in accordance therewith. The plaintiffs argue that "[t]he primary issue between the parties is whether punitive damages or damages for mental anguish may be recovered by [the defendants] against [the plaintiffs]." Plaintiff's Objections to Magistrate Judge's Report and Recommendation of February 11, 1999 at 4. They argue that this issue raises "a federal question of first impression," *Id.* at 9, and

---

[7] The text of this omitted footnote reads as follows: "Judge Harwood notes in his 'Order Responsive to Various Motions for Summary Judgment' that '[t]he issues presented by said motions have required that the Court become familiar with an extremely complicated body of state and federal statutory law, regulatory law, and case law.' (Doct. 12, Ex. D, p. 3)."

[8] The text of this omitted footnote reads as follows: "The parties have informed the court that most likely only one of the cases will be tried during that setting."

that the court should therefore exercise its discretion to hear these actions.

The plaintiffs cite *Youell v. Exxon Corporation*, 74 F.3d 373 (2d Cir. 1996), *cert. denied*, 517 U.S. 1251 (1996), in support of their arguments. The *Youell* court found that the district court abused its discretion by dismissing a declaratory judgment action in a case raising a novel question of federal admiralty law. The court found that the novel question of federal law there presented was "truly a brooding omnipresence," and that "a federal question of first impression must all but demand that the federal court hear the case." *Youell*, 74 F.3d at 376 (quoting *Youell v. Exxon Corp.*, 48 F.3d 105, 111-12, 114 (2d Cir. 1999), *cert. granted, judgment vacated* [for further consideration in light of *Wilton*], *Exxon Corp. v. Youell*, 516 U.S. 801 (1995)). The court thus found, in essence, that the presence of a novel question of federal law automatically overrides all other considerations weighing against the exercise of the court's discretion, including the potential waste of judicial resources.

Assuming, for the purposes of this discussion, that the plaintiffs are correct in asserting that their claims turn on a novel question of federal law, *Youell* would, if it were binding authority, require the court to deny the motions to dismiss. *Youell* does not bind this court, however. Neither does *Youell* persuade this court. The inflexibility underlying *Youell* is incompatible with the balancing approach that has traditionally governed the analysis of whether a federal court should hear a declaratory judgment action, even under the "exceptional circumstances" regime rejected by *Wilton*.[9] Instead of allowing the court to balance different considerations for and against hearing a

---

[9] In discussing the balancing approach required under the "exceptional circumstances" analysis, the court in *Murphy v Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999) stated as follows:

> While declining to prescribe a "hard and fast rule," the Supreme Court has set forth six factors that may be considered and weighed in determining whether exceptional circumstances exist that would permit a district court to decline exercising jurisdiction: (1) assumption by either court of jurisdiction over a res; (2) the

declaratory judgment action, *Youell* requires the court to summarily discard the entire balancing paradigm and retain jurisdiction if there is any novel federal question of law to be decided in the case. It requires the court to completely disregard any other considerations in favor of dismissal, no matter how numerous or how significant those other considerations are. Such reflexive territoriality is at odds with the balancing approach long used by federal courts in deciding whether to hear declaratory judgment actions and with the modern reality that state courts increasingly decide questions of federal law.[10] It is also at odds with the notion advanced in *Brillhart* and confirmed in *Wilton* that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act." *Wilton*, 515 U.S. at 282-83. *Youell's* encroachment on that discretion is unwarranted. The court is unwilling to adopt the *Youell* court's position. Rather, the court finds that the presence of a novel question of federal law should be but one factor to consider in determining whether to hear the instant declaratory judgment action.

---

        relative inconvenience of the forums; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Wilton v Seven Falls Co.*, 515 U.S. 277, 285-86, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *see also Evanston Ins Co v. Jimco, Inc.*, 844 F.2d 1185, 1190-91 (5th Cir.1988). The decision whether to surrender jurisdiction because of parallel state court litigation does not rest on a "mechanical checklist" of these factors, but on a "careful balancing" of them, "as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16, 103 S.Ct. 927.

*Murphy,* 168 F.3d at 738. Unlike this case, *Murphy* involved an abstention issue outside of the declaratory judgment context, so the "exceptional circumstances" analysis was applicable there.

    [10]*See* Daniel J. Meador, *Federal Law in State Supreme Courts*, 3 Const. Commentary 347, 351 (1986). In this article, Meador examined data from a study conducted in 1981 by the National Center for State Courts as well as supplementary data gathered in 1983. The 1981 study, Meador noted, "showed a three-fold increase of federal law in state supreme court decisions between 1959 and 1979. The [more recent] data show that there has been no diminution since 1979 and that indeed the involvement of federal law in state supreme court opinions may be continuing to grow. In the seven states surveyed in 1983, federal law was involved in 49% of the cases and federal questions were actually decided in 28% of all of the opinions." *Id.* at 351. *See also ASARCO, Inc. v. Kadish,* 490 U.S. 605, 617 (1989) ("Although the state courts are not bound to adhere to federal standing requirements, they possess the authority, absent a provision for exclusive federal jurisdiction, to render binding judicial decisions that rest on their own interpretations of federal law. ")

Using the balancing approach set forth in *Wilton*, the magistrate judge weighed the considerations for and against dismissal of this action and ultimately found that the action should be dismissed. He found that the parties in the instant actions are identical to those in the parallel state court actions. He found that there are several state court actions pending against the plaintiffs which were filed by persons other than the defendants and which are akin to the instant actions. The magistrate judge found that the state court judge has already tried two related longwall mining cases against the plaintiffs and that the state court has expended significant time and resources on the resolution of issues similar to those raised in this case. The magistrate judge also found that the record reflected that the state court judge had demonstrated his command of the subject matter. Weighing these considerations, the magistrate judge found, in essence, that it would be a waste of judicial resources for this court to hear the instant actions when the state court, before which parallel actions are pending, has already expended significant time and effort on related cases and is thereby already familiar with the statutes and regulations, the legal issues and the factual patterns of this group of cases. The court finds that these considerations would not be outweighed by the novel question of federal law alleged by the plaintiffs to exist in this case. After independently reviewing the record and the legal arguments asserted by the parties, the court agrees with the magistrate judge's analysis and finds that his Report and Recommendation is due to be adopted and approved. On the basis of that Report and Recommendation, as well as the court's findings and analysis contained herein, the court finds that the motions to dismiss are due to be granted.

### III.  CONCLUSION

The court finds that the magistrate judge's Report and Recommendation is due to be adopted and approved as the findings and conclusions of the court and that the defendants' motions to

dismiss each of the above-captioned matters are due to be granted. An appropriate order will be entered.

DONE this 30th day of July, 1999.

                                          /s/ U.W. Clemon
                                          _____
                                          U.W. CLEMON
                                          United States District Judge